JOSEPH VERDUN *et al.* Appellees, *vs.* AGNES H. BARR *et al.*
Appellants.

*Opinion filed December 21, 1911—Rehearing denied Feb. 8, 1912.*

1. JUDICIAL SALES—*when the return of a summons is sufficient though full names are not given.* A sheriff's return of a summons is sufficient even though it does not give the full names of the persons served but only their surnames and initials, where the return shows it was served on the persons named in the summons, in which their full names were given.

2. SAME—*provision of statute fixing time for filing executor's report of sale is mandatory.* The provision of paragraph 108 of the Administration act requiring an executor or administrator who has sold land to pay debts to file his report of sale on or before the first day of the term of court next succeeding the sale is mandatory, but a failure to file the report at that time does not necessarily render the sale void.

3. SAME—*object of provision fixing time for filing report of sale.* The object of the statutory provision requiring an executor or administrator to file his report of sale on or before the first day of the term of court next succeeding the sale is to avoid an approval of the sale without notice to the parties interested, and even if the report is not filed until a subsequent date it may be approved by the court after due notice to the parties interested.

4. SAME—*when notice of filing report of sale will be presumed.* Where an executor's report of sale was not filed until after the first day of the term of court next succeeding the sale, but there was ample time between the filing of the report and its approval to have given notice of the filing of the report to the parties interested, it will be presumed, when the sale is attacked collaterally after a lapse of more than twenty years, that such notice was given even though no notice appears in the record.

5. SAME—*fact that deeds were delivered to purchasers before sale was approved is not fatal.* The fact that the deeds to the purchasers at an executor's sale were· delivered before the sale was approved by the court is an irregularity which is cured by the subsequent approval of the sale, and which cannot be raised, after the lapse of many years, for the purpose of defeating the titles of innocent purchasers who have long been in possession of the lands.

6. SAME—*presumptions are in favor of jurisdiction when judicial sale is collaterally attacked.* A bill to set aside an executor's sale and for partition is a collateral attack upon the proceeding in

the county court under which the sale was made, and in such case nothing is presumed to be out of the jurisdiction of the county court except that which specially appears to be so.

7. SAME—*sale by executor for his own benefit is not void but voidable.* The fact that the purchaser at an executor's sale may have purchased for the executor does not render the sale void but only voidable, and if proceedings to set aside the sale are not instituted in apt time by those having the right to contest the same a ratification of the sale will be presumed, and they may be denied relief even though no statute of limitations has run.

8. SAME—*when executor's sale will not be set aside after lapse of many years.* An executor's sale, even though it may have been made indirectly to himself, will not be set aside, after the lapse of twenty-five years, at the suit of heirs who were minors at the time of the sale, where they were served with summons in the proceedings for the sale, which were shown in their entirety in the public records, and where the youngest child was thirty years of age at the time of the filing of the bill, which gave no excuse for the delay other than that the complainants were not advised of their rights in the land.

9. SAME—*when fact that an action for possession could not be brought does not excuse delay.* Remainder-men who were minors at the time of a sale of the land by the life tenant, as executor, have a right, at any time within three years after attaining their majority, to file a bill to set aside the sale upon the ground that it was made by the executor indirectly to himself; and their failure to attack the sale until the youngest child is thirty years old is not excused by the fact that the life tenant was living during that time, so that they could not maintain an action for possession of the land. · (*Mason* v. *Odum,* 210 Ill. 471, followed.)

APPEAL from the Circuit Court of Livingston county; the Hon. GEORGE W. PATTON, Judge, presiding.

James Henry, a bachelor, departed this life testate, in Livingston county, on April 12, 1879, leaving Alexander Cupples, a nephew, him surviving, as his sole heir-at-law. He left a considerable amount of personal property and died seized of 680 acres of farming land situated in said county, described as follows: The north-east quarter of the south-west quarter, the south half of the south-west quarter and the south-east quarter of section 8, the south-

west quarter of section 17 and the north-west quarter of section 20, all in township 30, range 6, east of the third principal meridian; also the north half of the north-east quarter of section 13, township 30, range 5, east of the third principal meridian. These lands were encumbered by mortgages to the amount of $9300. His will was admitted to probate in the county court of Livingston county, and Alexander Cupples, who was nominated as executor without bond, duly qualified. The second and third provisions of the will read as follows:

"*Second*—After the payment of all the debts aforesaid, I give, devise and bequeath all the residue and remainder of all my property, both real and personal, wherever the same may be situated, to my nephew, Alexander Cupples, to hold and enjoy for and during his natural life.

"*Third*—All the property above bequeathed and devised I give and devise to the children of the said Alexander Cupples and to the legal issue of any deceased child or children of said Cupples, by way of representation of such child or children, and to the heirs and assigns of such children forever, to have and to hold the same in equal parts from and after the death of their father, the said Alexander Cupples. It being my express intention to give to said Alexander Cupples a life estate in my property aforesaid, and the remainder, after his death, to the legal heirs of his body."

Alexander Cupples, at the time of the death of James Henry, had by his wife, Alice, the following named children: Agnes H., aged sixteen years; Franklin H., aged fourteen years; Jennie, aged thirteen years; Alexander, aged eleven years; James, aged nine years; William, aged six years; Alice, aged four years; Samuel, aged two years. The executor, subsequent to his appointment, filed a report showing that the personal property of said estate was exhausted and there was a deficiency of personal property to pay debts of about $800, and he thereupon filed a petition and obtained an order at the June term, 1881, of the county

court of Livingston county, to sell the real estate of the testator, or as much thereof as was necessary to pay such deficiency and costs. The sale was made in the month of July, 1881. The north half of the north-west quarter of section 13 was sold to George W. Newcomb for $580, subject to a mortgage for $1184.70 on said land, and the balance of the real estate, 600 acres, was sold to Ben A. Harding for $1892.50, subject to mortgages thereon aggregating $7407.50. The first day of the following term of the county court,—that is, the August term,—was August 15, 1881, and the report of the sale of said real estate was filed by the executor August 24, 1881, and was approved by the county court September 1, 1881, and deeds were made by the executor to the respective purchasers, the deed to Newcomb bearing date July 30, 1881, and the deed to Harding bearing date July 3, 1881. The deed to Newcomb was acknowledged August 10 and recorded August 17, and the deed to Harding was acknowledged August 24 and recorded September 9, 1881. Newcomb conveyed on January 5, 1882, the 80 acres purchased by him to William Flanigan, who has been in possession of the said premises since that date. Harding, on March 10, 1882, conveyed the north-west quarter of section 20 to Alexander Cupples, the executor, who on February 27, 1883, conveyed the east half of the north-west quarter of section 20, and on April 24, 1891, the west half of the north-west quarter of section 20, to J. J. Kelly, and thereafter Joseph Verdun purchased of Kelly the said north-west quarter of section 20, and has held the same by *mesne* conveyance from Harding since February 27, 1883. On March 2, 1882, Harding conveyed the south-west quarter of section 17 to Alexander Cupples, and Alexander Cupples, on April 3, 1893, conveyed said south-west quarter of section 17 to Dennis Kehoe, who on September 25, 1900, conveyed the same to Michael Kehoe, who has since then been, and now is, in possession of said south-west quarter

of section 17, holding the same by *mesne* conveyance from Harding. On March 2, 1882, Harding conveyed the south half of the south-west quarter and the north-east quarter of the south-west quarter of section 8 to Charles D. Chalfant, and on March 3, 1885, Chalfant conveyed the same to Samuel Sterns, and the same is now held by *mesne* conveyance from Harding by Martha B. Grundler. On September 6, 1881, Harding conveyed the south-east quarter of section 8 to William W. Wassom, with the exception of certain portions which had been set aside as a cemetery and which had been platted into town lots, and Wassom has been in possession thereof since that date.

On April 12, 1907, Joseph Verdun filed a bill in the circuit court of Livingston county against Agnes H. Barr, (*nee* Cupples,) Alexander Cupples, James Cupples and William Cupples to quiet his title to the north-west quarter of section 20. Agnes H. Barr, Alexander, James and William Cupples filed a cross-bill, claiming to be the owners of the said real estate, and answers and replications were filed. On the 18th day of June, 1907, Agnes H. Barr, Alexander Cupples, James Cupples and William Cupples filed their original bill in the circuit court of Livingston county for the partition among themselves and the children of Jennie Crawford (*nee* Cupples) and Franklin H. Cupples, both of whom were deceased, of all the lands of which James Henry died seized, making Joseph Verdun, William Flanigan, Michael Kehoe, Martha B. Grundler, William W. Wassom and Alexander Cupples, as executor of James Henry, deceased, and other parties, defendant, and Verdun, Kehoe, Grundler, Wassom and Flanigan filed a cross-bill to establish title to the said premises in themselves, respectively. Answers and replications were filed and the causes were consolidated and were referred to the master to take the evidence and report his conclusions. The master, after taking the evidence, filed a report recommending that the relief prayed for in the original bill of Joseph Verdun,

and in the cross-bill of Verdun, Flanigan, Kehoe, Wassom and Grundler, be granted. The court, after overruling exceptions to the master's report, entered a decree establishing the title of Verdun, Flanigan, Kehoe, Wassom and Grundler to the portions of the lands which had formerly belonged to James Henry and which were then in the possession of said respective parties in severalty. From the decree so entered in said consolidated case, Agnes H. Barr, James Cupples, Alexander Cupples and William Cupples, and the children of Jennie Crawford and Franklin H. Cupples, have prosecuted an appeal to this court. Alice and Samuel Cupples died during their minority.

CHESTER FIREBAUGH, and BUTTERS & ARMSTRONG, for appellants.

BOYS, OSBORN & GRIGGS, C. J. AHERN, A. C. NORTON, H. G. GREENEBAUM, R. S. McILDUFF, and B. R. THOMPSON, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

The appellants contend that they were not divested of the title to the lands devised to them in fee by their granduncle, James Henry, by the sales made to George W. Newcomb and Ben A. Harding by Alexander Cupples, as executor, by virtue of the order of the county court of Livingston county, for the following reasons: First, the return of the sheriff on the summons issued in the matter of the application for an order to sell real estate to pay debts was insufficient to give the county court of Livingston county jurisdiction of their persons, and that, they being minors at the time the order of sale was entered, the county court was without jurisdiction to enter the order of sale; second, that the report of sale of said real estate was not filed in the office of the clerk of said county court on or before the first day of the next term of court after the

sales were made, and that the sale of said lands made by said executor by virtue of the order of the county court, and the execution of the deeds to the purchasers at such sale, did not have the effect to divest them of their title to said lands; and third, that by virtue of the provisions of the will of James Henry, deceased, their father, Alexander Cupples, was given a life estate in said real estate and they were given the fee; that the sales by said executor to Newcomb and to Harding were not made in good faith, but were made to himself through Newcomb and Harding, and for the sole purpose of fraudulently depriving the appellants and their brothers and sisters of the fee title in said premises and investing Alexander Cupples with the same.

The return on the summons was in the following form:

"I have duly served the within by reading the same to the within named, A. H. Cupples, J. Cupples, A. Cupples, F. H. Cupples, A. Cupples, J. Cupples, S. Cupples, W. Cupples, June 2nd, '81, as I am herein commanded.        J. A. HUNTER, *Sheriff.*"

In *Simms* v. *Klein*, Breese, 371, the sheriff's return showed that summons had been served upon I. R. Simms instead of Ignatius R. Simms, and it was held a good return; and in *Bancroft* v. *Speer*, 24 Ill. 228, the return was in the following form: "Served the within by reading the same to and in the hearing of S. B. Bancroft, June 21, 1858," and it was held an insufficient return, as it did not show the summons was served on the defendant. It was, however, said: "Had he returned that he had served it on the within named defendant, or employed any language from which we could have seen that such was the fact, the return would have been sufficient." Here, while the full names of the persons served were not given, the return showed it was served upon the persons named in the summons where their full names were given. It is therefore apparent from the return the persons served were the persons named in the summons, and that was sufficient. The return, under the authorities heretofore cited, was ample

to confer jurisdiction over the persons of the appellants in the proceedings in the county court to sell said real estate.

The statute (Hurd's Stat. 1909, chap. 3, par. 108,) contemplates that an executor or administrator, where real estate is sold under order of court to pay debts, shall file a report of the sale on or before the first day of the term next succeeding the sale, and this provision of the statute cannot, as we think, be held, as is contended by the appellees, to be merely directory. The object of the provision was to fix a time at which the heir, devisee or creditor, or other person interested, might, without notice, appear and object to the confirmation of a sale of real estate to pay debts. We do not understand, however, that the time when the statute provides the report of sale shall be filed in the clerk's office is so far jurisdictional that the sale would be held to have been abandoned and the county court to have lost jurisdiction of the subject matter of the sale if the report was not filed in the clerk's office on or before the first day of the term of court succeeding the date of sale. Clearly, an executor or administrator could not avoid a sale by a failure or refusal to file a report of the sale in time. We are of the opinion that as the object of the statute is to avoid the approval of a report of the sale of real estate to pay debts without giving the parties in interest an opportunity to be heard, the report may be filed subsequent to the first day of the term of court succeeding the date of sale and approved by the court upon notice to the parties in interest of the filing of the report of sale, as such notice would serve every purpose that the filing of the report would serve if filed prior to or upon the first day of the term succeeding the sale. It appears that the sale was had on the 30th of July, that the first day of the succeeding term was August 15, that the report was not filed until August 24, and that it was approved on the first day of September. There was ample time to give notice between the date of sale and the first day of September that the re-

port would be filed, and that the court would be asked, on the date fixed in the notice, to approve said sale. While no notice appears in the record, we think after a lapse of a period of twenty-five years, and when the approval of said sale is attacked in a collateral proceeding, the presumption must obtain that due and proper notice was given of the filing of the report of sale before the approval of the sale by the court on September 1.

It is said the deeds to Newcomb and Harding were executed and delivered before the sales were approved. This appears to be true. That, however, was a mere irregularity, which we think was cured by the subsequent approval of the sales. As we view the matter, the approval of the sales, and not the filing of the report of sale, is the important matter, and that mere irregularities in the sale or in the time when the deeds were actually delivered cannot be raised, after the lapse of many years, against innocent parties who have been in possession of the lands sold, for the purpose of defeating their titles. In *Bradley* v. *Drone,* 187 Ill. 175, it was held a bill for partition and to set aside an administrator's sale was a collateral attack upon the proceedings of the county court under which the sale was made, and that in a collateral attack upon the proceedings of the county court nothing is presumed to be out of its jurisdiction except that which especially appears to be so, and in that case, in order to sustain the sale, the presumption obtained that a second summons had been issued where the first summons was not sufficient to confer jurisdiction. We are of the opinion in this proceeding the presumption obtains that the parties had notice of the filing and approving of the report of the sales made to Newcomb and Harding, and that the approval of said sales by the county court cannot be set aside, as against innocent third parties, at this late day in a collateral proceeding, and that the approval of the sales by the county court validated the deeds to the real estate before that date delivered to the purchasers.

The evidence in this record shows, we think, the sale to
Newcomb was made in good faith. We are, however, im-
pressed with the view that the sale to Harding was made
for the benefit, at least in part, of the executor, Alexander
Cupples. The accounts of the executor were apparently
manipulated in order to create a deficiency of personal es-
tate upon which to base an application for the sale of real
estate, and the purchaser of the 600 acres was the son of
the attorney for the executor and was a young man with-
out means, and he afterwards conveyed to Cupples, or such
persons as Cupples directed, substantially all the land which
he purchased. If, however, it be conceded that the sale
was wrongfully made to Harding for the benefit of Cup-
ples it was not a void but only a voidable sale, and one
which could be set aside by the heir, devisee or creditor, if
action were taken within a reasonable time. The sale was
made in 1881 and this bill was filed in 1907, a period of
more than twenty-five years having intervened between the
date of the sale and the date of the filing of the bill. Dur-
ing that time the real estate has passed into the hands of
innocent third parties and has greatly increased in value,
and it would now and at. this late date be unjust and in-
equitable to set aside the sale to Harding for mere irregu-
larities in the sale, or for other reasons which the appel-
lants could have taken advantage of upon their arriving at
their majority or within a reasonable time thereafter. At
the time the bill for partition was filed Agnes H. Barr was
forty years of age, Alexander Cupples was thirty-five years
of age, James Cupples was thirty-three years of age and
William Cupples thirty years of age, and more than twenty-
five years had elapsed subsequent to the date of the sale.
No excuse is made for this great delay other than that
appellants were not advised of their rights in said lands.
They had all been served with summons in the application
for the order of sale and the public records of Livingston
county showed the entire transaction. We are therefore

253 — 9

constrained to hold, in view of all of the facts shown by this record, that the title of the present claimants to said lands ought not now be disturbed by reason of the irregularities which occurred in connection with the sale, or the fraud of Alexander Cupples and Harding in buying in the land at the sale for the benefit of the executor. It has been repeatedly held by this court that the fact that the purchaser at an executor's or administrator's sale purchased for the executor or administrator does not render the sale absolutely void but only voidable, and if proceedings are not instituted in apt time to set the sale aside by those having the right to contest the same, a ratification of the sale by them will be presumed, (*Sloan* v. *Graham*, 85 Ill. 26; *Mason* v. *Odum*, 210 id. 471; *Brinkerhoff* v. *Brinkerhoff*, 226 id. 550;) and that relief will be denied under such circumstances even though no statute of limitations has run. *Mason* v. *Odum, supra.*

It is urged by the appellants that the life tenant, Alexander Cupples, did not depart this life until subsequent to the commencement of this litigation, and that during the time which has intervened between the date of the sale of the said real estate and his death, which occurred on June 4, 1909, they could not maintain an action to recover the possession of said land. Under the authority of *Weigel* v. *Green*, 218 Ill. 227, and kindred cases, an action by the remainder-man cannot be maintained to obtain possession of real estate during the existence of the life estate. We do not think, however, that the fact that the appellants could not maintain an action to obtain possession of this land prevented them from instituting legal proceedings, upon their attaining their majority, to set aside the sale to Harding. They could, at any time within three years after they attained their majority, being the owners in fee of said real estate, have filed a bill in equity to have the sale set aside. This they have neglected to do, and now, although there is no statute of limitations which can be ap-

plied against them, clearly by reason of their *laches* they are barred of relief. The case of *Mason* v. *Odum, supra,* is very much like the case at bar, and in principle, we think, controls this case.

We have examined this record with care and are of the opinion the decree of the circuit court should be affirmed, which will accordingly be done.        *Decree affirmed.*